FILED
United States Court of Appeals
Tenth Circuit

January 20, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER WAYNE THORNTON,

    Defendant - Appellant.

No. 15-1345

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CR-00443-RBJ-1)**
_____

Ryan K. Melcher, Assistant Federal Public Defender (Virginia L. Grady, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Karl L. Schock, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Defendant Christopher Thornton appeals from the district court's sentence of seventy-eight months in prison. The issue is whether the district court committed procedural error by basing the length of Thornton's sentence, in part, on the

treatment and vocational services he would receive in jail.  Federal judges may not use imprisonment as a means to promote defendants' correction or rehabilitation. Tapia v. United States, 564 U.S. 319, 335 (2011).  In this case, the district court calculated the advisory prison range under the Sentencing Guidelines and Thornton moved for a downward variance—requesting a sentence below the advisory range. The court denied that request, offering several reasons not to impose a below-guidelines sentence, including that Thornton "needs enough time in prison to get treatment and vocational benefits."  (Aplt. App. Vol. III. at 36).  Thornton claims on appeal, without having objected in the district court, that the court's rationale for sentencing violates Tapia.  With this new argument we review the case for plain error.

In evaluating Thornton's sentence, we clarify several principles.  First, denials of downward-variance motions are subject to Tapia scrutiny.  Second, Tapia error can occur even when a district court articulates additional valid reasons for the prison sentence.  Third, a district court need not expressly link a prison sentence to a specific treatment program in order to trigger Tapia error.  Fourth, there is no Tapia error when a district court addresses rehabilitation merely to refute an offender's argument that in-prison treatment justifies a lesser sentence, but there *is* error when the district court goes further and grounds his sentence, in part, on the perceived benefit to the offender of providing prison-based rehabilitation.

Applying these principles, we find the district court's consideration of in-prison treatment was erroneous, but not plainly so. Accordingly, having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

## I.     Factual Background

In 2014, Thornton pleaded guilty to possession of a firearm as a felon. The district court calculated the range of imprisonment under the federal Guidelines was seventy-seven to ninety-six months. Thornton requested a downward variance to thirty-eight months based on his youth and the nonviolent nature of his criminal history. He also argued that in-prison treatment during the proposed thirty-eight months would help mitigate any potential risk he posed to the community. The district court, however, denied the variance motion. Even though the district court was initially prepared to sentence Thornton to eighty-four months in prison, the government ultimately requested a bottom-guideline sentence of seventy-seven months. After explaining his reasoning, the judge imposed a sentence of seventy-eight months' imprisonment.

The district court offered several reasons for its decision not to grant the downward variance or otherwise to impose a lesser sentence. The district court first emphasized: "[T]he overriding reason is that I don't think certainly in this case that it is in the defendant's best interest to argue for or for a court to give him the lowest possible sentence. This is a fellow who doesn't do well on his own. Never has. *And he needs all kinds of services that he can get and will get in prison*[.]"  (Aplt. App.

3

Vol. III. at 32) (emphasis added). The court then turned to Thornton's criminal history, citing his juvenile felony-level adjudications and his adult felony convictions. It also discussed Thornton's upbringing, observing how Thornton had been deserted by his mom and had a challenging history with his dad. The court then addressed Thornton's gang history, his lack of education, and the credit Thornton warranted for going back to get his GED. Then, the judge said: "*He's got mental-health issues, and he needs treatment. . . .* He hasn't received a lot of treatment, mostly because he has rejected the efforts of the system in the past to provide him treatment." (Id. at 35) (emphasis added). The court also confirmed that Thornton is a community safety risk because he "mixes drugs and firearms." (Id.). In finalizing his decision at seventy-eight months' imprisonment, the judge summed up with three reasons: "I do that [1] because of the community-safety issues, [2] because of his history of rejecting efforts to help him, [3] *because I am firmly convinced that he needs enough time in prison to get treatment and vocational benefits*." (Id. at 36) (emphasis added).

## II.    Legal Background

The Sentencing Reform Act commands federal judges generally to consider several factors in determining an appropriate sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), as well as the public's need for punishment, deterrence, community safety, and the defendant's need for rehabilitation or correctional

4

treatment, § 3553(a)(2). But the Act separately and more specifically addresses itself to the sentence of imprisonment, directing judges to "consider the factors set forth in section 3553(a) . . . , *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*." § 3582(a) (emphasis added). The same law instructs the Sentencing Commission to "insure that the guidelines reflect the *inappropriateness* of imposing a sentence to a term of imprisonment for the purpose of *rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional training*." 28 U.S.C. § 994(k) (emphasis added). The Supreme Court interpreted these two sections to permit a sentencing court to consider the § 3553(a) factors in deciding the length of imprisonment, except for the factor relating to rehabilitation and correctional treatment. Tapia v. United States, 564 U.S. 319, 326-34 (2011). Accordingly, Tapia announced an unequivocal rule: "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Id. at 335.

## III. Standard of Review

Thornton did not argue below that the district court improperly based Thornton's sentence on rehabilitation. We therefore review for plain error. E.g., United States v. Mendiola, 696 F.3d 1033, 1036 (10th Cir. 2012). Under this standard, Thornton must show: (1) the district court erred, (2) the error was plain,

5

(3) the error prejudiced his substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

**IV.    Discussion**

Considering just the first two prongs of plain-error review, the sentence may be reversed only if the error was plain or obvious.  See, e.g., United States v. Ruiz-Gea, 340 F.3d 1181, 1187 (10th Cir. 2003).  We thus divide our discussion into two parts: (1) whether there was error, and (2) whether any error was plain.  At the first stage of our inquiry (the existence of error), we address and reject four distinct arguments for why Tapia may not apply in this case.  At the second stage (the obviousness of the error), we conclude that there was sufficient nuance in some of the Tapia analysis—particularly in light of United States v. Naramor, 726 F.3d 1160 (10th Cir. 2013)—such that the district court's error was not plain.  Accordingly, we affirm.

A. The district court erred in basing Thornton's sentence, in part, on Thornton's need for treatment in prison

In explaining the denial of the downward variance motion, the district court started and ended with statements about Thornton's need for in-prison treatment. The court began by saying the "overriding reason" for denying the variance motion was that it was not in Thornton's "best interest" because he "needs all kinds of services that he can get and will get in prison[.]"  (Aplt. App. Vol. III at 32).  Then,

6

after discussing community safety and Thornton's criminal history, the court concluded its explanation by stating "I am firmly convinced that [Thornton] needs enough time in prison to get treatment and vocational benefits." (Id. at 36). Faced with this record, we conclude the district court grounded Thornton's sentence, at least in part, on a desire to promote his rehabilitation. In determining whether the district court erred in doing so, we also examine several possible arguments for why Tapia may not control. We find them unpersuasive.

### 1. *Denials of downward variance motions are subject to Tapia review*

The government argues for a categorical rule that denials of downward-variance motions are not subject to Tapia error. In the government's view, a sentencing judge may properly consider in-prison treatment options as a basis for declining to impose a below-guidelines sentence. But that position belies precedent, the relevant federal statute, and common sense.

In United States v. Cordery, we found plain Tapia error because, in part, there was "every reason to believe[, absent the error,] the district court may [have imposed] a sentence *below* [the bottom of the guidelines range.]" 656 F.3d 1103, 1108 (10th Cir. 2011) (emphasis added). This precedent supports the conclusion that, for the purpose of applying Tapia, there is no difference between refusing a below-guidelines sentence and granting an above-guidelines sentence.

Consider also the statutory language that gave us Tapia in the first place. The statute reads, "The court . . . *in determining the length of the term [of imprisonment]*,

7

shall consider the factors set forth in section 3553(a) . . . , recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added). When a court considers a motion for downward variance, it is "determining the length" of a prison sentence, and therefore must be governed by the statutory proscription.

Common sense supports the same conclusion. Refusing to sentence a defendant below the Guidelines based on his rehabilitative needs creates the same erroneous result as sentencing him within or above the Guidelines based on rehabilitation: a term of imprisonment that is longer than it otherwise would have been had rehabilitative factors not been a basis for the sentence. Accordingly, we see no good reason to treat motions for downward variance any differently from other decisions impacting the length of the sentence for the purpose of applying the Tapia rule.[1]

### 2. *Alternative valid reasons do not cure* Tapia *error*

The government next points to alternative reasons for denying Thornton's motion for a downward variance, citing the district court's reliance on community safety and Thornton's criminal history. But the existence of alternative permissible

---

[1] After the district court determined Thornton's sentence, the Tenth Circuit decided United States v. Tidzump, 841 F.3d 844 (10th Cir. 2016), which, based on its facts, confirmed that a refusal to grant a downward variance is subject to Tapia error. In that case, the district court actually imposed a below-guidelines term of imprisonment—but the defendant had asked for an *even lower* sentence, and we faulted the district court for relying on rehabilitation in declining to grant that requested variance. Id. at 845-46.

reasons does not cure <u>Tapia</u> error. <u>See Tapia</u>, 564 U.S. at 335-36 (Sotomayor, J., concurring) (acknowledging the district court erred even though it considered other factors in addition to rehabilitation); <u>Cordery</u>, 656 F.3d at 1105 (finding plain <u>Tapia</u> error even when the district court had imposed a sentence "based on several of the sentencing factors" that were permissible). If the sentence of imprisonment is based even partially on rehabilitation, it is erroneous.

A rule requiring reversal only when rehabilitation is the sole motivation would not make sense. The federal sentencing statute *mandates* that judges consider other factors. 18 U.S.C. § 3553(a) ("in determining the particular sentence to be imposed," the court "*shall*" consider enumerated factors (emphasis added)); § 3582 ("in determining the length of the term [of imprisonment]," the court "*shall* consider the factors set forth in section 3553(a)" (emphasis added)). Therefore, there will almost always be some valid reasons advanced by the district court for imposing the sentence issued. So the existence of such alternative grounds for a sentence does not cure the error.

>    3. *There is <u>Tapia</u> error even when there is no specific link between a treatment program and the length of prison term*

In the government's view, it is not enough for a district court to reference unspecified treatment or services—there is no error, so argues the government, unless the judge actually made a specific link between the length of the sentence and specific treatment programs or services in prison. Applying that rule, the government

says seventy-eight months here was not necessary to qualify Thornton for any specific treatment program, so there was no error.

But Tapia does not require such a direct connection between a treatment program and the length of the prison sentence. By its own terms, Tapia prevents judges from lengthening a prison sentence "to enable an offender to complete a treatment program *or otherwise to promote rehabilitation*." Id. at 335 (emphasis added). This "or otherwise" clause shows that the prohibition against imposing a sentence for rehabilitative purposes must extend beyond that narrow set of circumstances where the sentence is lengthened specifically to qualify the defendant for a known rehabilitation program. Moreover, in United States v. Valencia, a persuasive but not binding case,[2] we found Tapia error without a direct link between the length of the sentence and a specific treatment program. 776 F.3d 1173, 1175 (10th Cir. 2015) (remanding even when the district judge did not select a sentence based on the minimum time necessary to complete or be eligible for in-prison treatment, but when the judge said generally that the Defendant required additional treatment, care, and services).

It is true that some of our Tapia cases have factually involved such a direct connection between the length of the sentence and a specific treatment program. See United States v. Tidzump, 841 F.3d 844, 845-46 (10th Cir. 2016) (finding Tapia error when the district judge selected a sentence based on the belief that it was the

---

[2] While Valencia was in fact published in the Federal Reporter, it was not intended for publication because it was an Order and Judgment of this Court. Therefore, although it is not binding, it is persuasive.

10

minimum necessary for the defendant to qualify for a drug treatment program in prison); <u>Mendiola</u>, 696 F.3d at 1035 (same); <u>Cordery</u>, 656 F.3d at 1105 (same). Even <u>Tapia</u> itself involved a sentencing decision based on the judge's attempt to give the defendant sufficient time in prison to complete a 500-hour drug program. 546 U.S. at 334; <u>see also</u> <u>id.</u> at 337 (Sotomayor, J., concurring). But we have never said such a connection is *required*. That would have contradicted <u>Tapia</u>'s holding and would cut against the facts of one of our non-binding cases, <u>United States v. Valencia</u>, finding error without such a requirement, 776 F.3d at 1175.

> 4. *That Thornton himself raised the prospect of rehabilitation does not cure this particular <u>Tapia</u> error*

When asking for the downward variance, Thornton was concerned that the district court would deny his request on a belief that he posed a danger to the community. Acting on that concern, Thornton argued that in-prison treatment over the course of thirty-eight months would be sufficient to mitigate any threat he posed to the public—thus, in Thornton's view, a longer sentence would not be necessary because he would already benefit from in-prison treatment for a sufficient period. In light of that, it is understandable that the district court addressed Thornton's argument about the effects of in-prison rehabilitation programs. But in this case the record shows that the district court went further and actually imposed a prison

11

sentence motivated, in part, by a desire to give Thornton the benefits of treatment in prison.[3]

In a situation where a court is addressing a rehabilitation argument raised by the offender himself, the court might think it is pinned on the horns of an impossible dilemma. On the one hand, it must consider community safety—and an offender's argument that rehabilitation mitigates the community risk is directly relevant to that consideration. On the other hand, it must be careful of Tapia's strict boundaries. However, Tapia does not bar discussion of the *consequences* of in-prison treatment on a possible aggravating factor (e.g., community safety) in denying a downward variance; instead, it only precludes lengthening a prison sentence for the *purpose* of providing an offender with perceived rehabilitative benefits. Cf. Tapia, 564 U.S. at 334 ("A court commits no error by *discussing* the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." (emphasis added)); United States v. Lemon, 777 F.3d 170, 174 (4th Cir. 2015) (observing the "broad consensus" that Tapia error turns on "whether a sentencing court's reference to rehabilitative needs is causally related to the length of the sentence").

That is the teaching of United States v. Naramor, 726 F.3d 1160, 1168 (10th Cir. 2013). The offender in Naramor raised the issue of rehabilitation as an argument

_____

[3] We do not consider this invited error. Invited error occurs when the party sought out or "affirmatively approv[ed]" an errant outcome. See United States v. Cornelius, 696 F.3d 1307, 1319 (10th Cir. 2012). It is a "species of waiver" because it requires intentional relinquishment of a right. United States v. Rodebaugh, 798 F.3d 1281, 1304 (10th Cir. 2015). In this case, Thornton did not seek out or willingly approve of a *longer* sentence based on rehabilitation—he in fact asked for just the opposite. Thus, this is not a proper fit for the invited error doctrine.

for a *shorter* prison sentence, and in response to the offender's argument, the district court discussed in-prison treatment in order to explain why "earlier release would not improve treatment options[.]" Id. at 1168. Reviewing the district court's discussion of rehabilitation, we found no Tapia error because the district court "did not tie the length *of his sentence* to his need for treatment." Id. (emphasis added). In other words, reading that case holistically, it was evident that the district court there did not, in fact, extend the length of the sentence for the *purpose* of getting the defendant needed treatment in prison. Absent that motivation to improve an offender's lot by giving him more time in prison, there is no Tapia error.

Thornton, like the defendant in Naramor, raised the prospect of prison rehabilitation in advocating for a lesser sentence. But *unlike* in Naramor, where the court determined the sentence for entirely proper reasons and the district court discussed rehabilitation merely to reject the offender's specific argument, the record in this case suggests the district court affirmatively desired to give Thornton enough time in prison to turn his life around, and expressly predicated the imposed sentence, in part, on that desire. (Aplt. App. Vol. III at 32) ("And he needs all kinds of services that he can get and will get in prison[.]"); (id. at 35) ("He's got mental health issues, and he needs treatment."); (id. at 36) ("I am firmly convinced that he needs enough time in prison to get treatment and vocational benefits."). That motivation is precisely what Tapia proscribes. Thus, the district court erred.

13

B.  Although the district court erred in predicating the sentence, in part, on Thornton's rehabilitative needs, that error was not plain

Thornton must also prove the district court's error was plain or obvious.  An error is plain "when it is contrary to well-settled law."  United States v. Ruiz-Gea, 340 F.3d 1181, 1187 (10th Cir. 2003).  For that inquiry we look to whether the Supreme Court or the Tenth Circuit has addressed the issue.  Id.  When the Supreme Court announced its rule in Tapia, it spoke unequivocally in precluding courts from considering rehabilitation when imposing or lengthening a prison sentence.  See Mendiola, 696 F.3d at 1036 n.2 ("Tapia's holding was clear and unequivocal.").  Even Tapia itself concluded the reliance on rehabilitation was so plainly contrary to the federal statute that it warranted a finding of plain error.[4]  See 546 U.S. at 322 (noting defendant's failure to object in the district court); id. at 335 (remanding for consideration of the remaining prongs of plain-error review).

That being said, this case involves some legal nuances that are not obvious.  In particular, two issues may not have been clearly foreclosed by existing precedent: (1) whether Tapia is only violated when the court expressly links the length chosen for the prison sentence to a specific treatment program (see *supra* Part IV.A.3), and (2) whether Tapia is violated when the district court references rehabilitation only after the offender himself injects rehabilitation into the sentencing calculus on his own initiative, (see *supra* Part IV.A.4).

---

[4] The Supreme Court's finding of plain error in Tapia is a reminder that plain error may be found even when there is no previous controlling authority from the Supreme Court or relevant courts of appeals—an error may still be plain if the statute itself conveys a clear command.

14

First, although we hold that <u>Tapia</u> does not require such a direct connection between a treatment program and the length of the prison sentence, there is no binding case that has previously so held. Our "Order and Judgment" in <u>United States v. Valencia</u>, 776 F.3d 1173 (10th Cir. 2015), which found error without such a connection, is persuasive, but not binding. Moreover, as noted earlier, most cases from this circuit have factually involved that express connection.

Second, before today's decision, and in light of <u>United States v. Naramor</u>, 726 F.3d 1160 (10th Cir. 2013), a district court would have lacked clear guidance from controlling authority on how to consider rehabilitation-based arguments raised by the offender as a grounds for leniency. We have now clarified that a district court *may* address rehabilitation in evaluating an offender's argument that such rehabilitation would lessen the offender's danger to the community and thereby justify a shorter term of imprisonment.[5] <u>See</u> <u>Naramor</u>, 726 F.3d at 1168 (finding no <u>Tapia</u> error when the district court's reference to in-prison treatment was made only to refute the offender's rehabilitation-based argument). But a district court *may not* then base the length of imprisonment on a desire to promote the offender's rehabilitation. That is, the court may not lengthen a prison sentence for the purpose of exposing the offender

---

[5] A district court does not violate <u>Tapia</u> merely by discussing the benefits of in-prison treatment when such discussion did not actually motivate a longer sentence, but was merely incidental thereto. <u>See</u> <u>Tapia</u>, 564 U.S. at 334 ("A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs."); <u>United States v. Lemon</u>, 777 F.3d 170, 174 (4th Cir. 2015) (observing the "broad consensus" that Tapia error turns on "whether a sentencing court's reference to rehabilitative needs is causally related to the length of the sentence").

15

to the rehabilitative benefits of prison. Before today, no controlling authority has clearly spelled out this delineation, so we cannot fault the district court here for committing <u>Tapia</u> error after Thornton himself injected the rehabilitation issue into the sentencing discussion. <u>See</u> <u>Ruiz-Gea</u>, 340 F.3d at 1187 (explaining that the obviousness of the error turns on the presence of controlling authority that has spoken clearly to the issue).

These are precisely the nuances that could have been worked out—and error avoided—had Thornton made a <u>Tapia</u> objection in the district court at the time of sentencing. Had this issue been raised below, we have no doubt that the district court could have clarified its reasoning and avoided <u>Tapia</u> error. But because Thornton did not raise the issue when it could have been meaningfully addressed, we are forced at the appellate level to review a record that has now become set in stone. That is precisely what the plain-error doctrine is designed to discourage. Here, the plain-error doctrine proves fatal to Thornton's claims.

## V.  <u>Conclusion</u>

We find the district court's consideration of rehabilitation as a part of its sentencing calculus was erroneous, but not plainly so. Accordingly, we AFFIRM the sentence.

16